IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| STEPHEN BOLLSCHWEILER et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | EP-14-CV-275-DB |
| | § | |
| EL PASO ELECTRIC COMPANY, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

On this day, the Court considered Defendant El Paso Electric Company's ("Defendant") "Motion for Summary Judgment and Brief in Support" ("Motion"), filed on August 14, 2015. The Motion is fully briefed.

On or about October 16, 2015, the Court informed the parties telephonically that it would grant summary judgment on the claims of Mr. Armendariz, Mr. Calzadilla, and Mr. Merrill but deny summary judgment on all others. Further, the Court indicated that it would issue a short order ruling on the Motion and, subsequently, a memorandum opinion explaining the ruling's basis. On November 5, 2015, the Court issued the short order. This is the corresponding memorandum opinion.

## BACKGROUND

This lawsuit is a collective action brought under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq. The plaintiffs—Stephen Bollschweiler, Raymond C. Armendariz, Daniel Duchene, Jose J. Calzadilla, Herlinda A. Avila, Sharon Hoover, Ray A. Merrill Sr., and Adrian J. Nunez (collectively, "Plaintiffs")—are current and former Systems Operators employed by Defendant in El Paso, Texas. Plaintiffs claim that Defendant misclassified them as exempt employees and, as a result, failed to pay them overtime.

Accordingly, they seek damages for unpaid overtime. Defendant counters that Systems Operators are administrative employees and, as such, exempt from the FLSA's overtime requirements.

Plaintiffs filed this lawsuit in state court on June 23, 2014. On July 21, 2014, Defendant removed it to this Court. On August 14, 2015, Defendant filed the instant Motion. On August 28, 2015, Plaintiffs filed their "Response in Opposition to Defendant's Motion for Summary Judgment" ("Response"). On September 4, 2015, Defendant filed its "Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment" ("Reply").

Plaintiffs work in Defendant's "control room." Mot. Summ. J. A-2, at 94–95. Collectively, they sit at four desks—the generation desk, transmission desk, distribution desk, and real-time scheduling desk—where they monitor and control the company's vast system for producing and delivering electricity. *Id.*; Mot. Summ. J. Ex. A-3, at 146–53. Broadly speaking, a Systems Operator's primary duty is "to provide electricity and to provide a service regarding electricity." Resp. to Mot. Summ. J. Ex. A, at 4. The role of Systems Operators is technical; they are not "running the company." *Id.* at 14; Resp. to Mot. Summ. J. Ex. F, at 21.

Mr. Bollschweiler, who has worked at the transmission and distribution desks, testified that his role is to "maintain the power system"—or, more specifically, "maintain the voltage by using resources" such as the company's ability to generate electricity or purchase it from other utility companies. Mot. Summ. J. Ex. A-3, at 146. "[I]f the voltage is low in one area" of the system, a Systems Operator will "use the resources to raise it," and if the voltage is "high in one area," a Systems Operator will "use the resource [sic] to lower it." *Id.* Mr. Bollschweiler described the primary duty of a Systems Operator as "getting the power to the customer." *Id.* at 147.

2

Ms. Hoover, who has worked at the transmission and distribution desks, described her role as "basically to provide electricity to customers safely and reliably" or "running the system in such a way that—to provide service to customers." Mot. Summ. J. Ex. A-6, at 258–59. Mr. Calzadilla, who has worked at the transmission desk, described his role as to "maintain system voltages for the grid" and "operate the . . . bulk electric system in a safe manner." Mot. Summ. J. Ex. A-5, at 217–18. When a problem arises, perhaps interrupting service to customers, Systems Operators at the transmission desk look at "distribution maps" and try to "determine where the fault is or isolate that fault and reroute the circuit," such as by "moving power from one line to the other." *Id.* at 222–23.

Mr. Nunez testified that the role of Systems Operators at the generation desk is to "balance the demand [for electricity] with the generation" of it. Mot. Summ. J. Ex. A-7, at 298. To do so, they "coordinate[] with the power plant operators" and with employees in the "marketing" department, who purchase electricity from other utility companies when demand for electricity exceeds what the company's generators can supply. Mot. Summ. J. Ex. A-2, at 101. Ms. Avila and Mr. Merrill testified similarly. Mot. Summ. J. Ex. A-4, at 188; Ex. A-8, at 327.

According to Ms. Avila, her role at the real-time scheduling desk is to approve or deny requests by the marketing department to purchase, sell, or transmit electricity. Mot. Summ. J. Ex. A-4, at 177–84. Systems Operators at the real-time scheduling and generation desks coordinate with each other and with marketers to facilitate the purchase and sale of electricity. Mot. Summ. J. Ex. A-8, at 332–33.

Plaintiffs' work affects the areas of quality control, safety and health, and legal and regulatory compliance. However, the evidence is mixed on whether Plaintiffs work primarily in any of those areas. Mr. Martinez testified in his deposition that they do not. Resp. to Mot.

3

Summ. J. Ex. A, at 4–5.  At least two Systems Operators agreed.  *Id.* at 14; Resp. to Mot. Summ. J. Ex. F, at 22; Ex. H, at 29.  Mr. Armendariz, by contrast, testified that ensuring Defendant's compliance with "rules," "regulations," and "guidelines" is "the whole scope of [his] work." Mot. Summ. J. Ex. A-2, at 93.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."  Fed. R. Civ. P. 56(c)(1).  "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact."  *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex*, 477 U.S. at 323).  Where, as here, the burden of proof lies with the nonmoving party, the moving party may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  While the moving party "must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

A fact is "material" only if it would permit "a reasonable jury . . . [to] return a verdict for the nonmoving party" and "might affect the outcome of the suit."  *Douglass v. United*

*Servs. Auto. Ass'n*, 65 F.3d 452, 458–59 (5th Cir. 1995), *aff'd en banc*, 79 F.3d 1415 (5th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986)). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.* The nonmovant "must identify specific evidence in the record and articulate [how] that evidence supports that party's claim." *Id.* "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a "scintilla" of evidence.'" *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citing *Liberty Lobby*, 477 U.S. at 255).

## ANALYSIS

Defendant argues that Plaintiffs are exempt from the FLSA's overtime provisions as administrative employees. Whether an employee is exempt "is primarily a question of fact." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330 (5th Cir. 2000). "However, the ultimate decision whether the employee is exempt from the FLSA's overtime compensation provisions is a question of law." *Id.* at 331.

The employer bears the burden of proving the exemption. *Kohl v. Woodlands Fire Dep't*, 440 F. Supp. 2d 626, 637 (S.D. Tex. 2006). "It is well settled that exemptions from the [FLSA] are to be narrowly construed." *Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290, 295 (1959); *see also Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) ("We have held that

5

these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."); *Auer v. Robbins*, 519 U.S. 452, 462–63 (1997) (acknowledging the rule).

To obtain the administrative exemption, an employer must prove three elements. First, the employer must prove that the employee is "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week." 29 C.F.R. § 541.200(a)(1). Second, the employer must prove that the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer." 29 C.F.R. § 541.200(a)(2). Third, the employer must prove that the employee's primary duty "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). The Parties agree that the first element is met. Thus, the Court will address only the second and third elements.

### 1. Whether Plaintiffs' primary duty is the performance of office or non-manual work directly related to Defendant's management or general business operations

The parties agree that Plaintiffs perform office or non-manual work and that Plaintiffs' work is not directly related to management. Reply to Resp. to Mot. Summ. J. 10. Therefore, the only disputed issue related to this element is whether Plaintiffs' work is directly related to Defendant's general business operations. The Code of Federal Regulations ("CFR") explains:

> The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

6

29 C.F.R. § 541.201(a). Courts commonly refer to the conceptual distinction between administration and production as the administration–production dichotomy. Which side of the dichotomy an employee falls on is not dispositive. *E.g.*, *Villegas v. Dependable Const. Servs., Inc.*, Civ. No. 4:07-cv-2165, 2008 WL 5137321, at *8 (S.D. Tex. Dec. 8, 2008) (noting that "the production/administration distinction is not dispositive"); *see also* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22121, 22141 (April 23, 2004) (to be codified at 29 C.F.R. pt. 541) (explaining the Department of Labor's view that the dichotomy "has always been illustrative—but not dispositive—of exempt status" and declining to remove the dichotomy from the CFR). Rather, it is simply "one factor in the ultimate analysis of whether the employee's work is directly related to general business operations." *Villegas*, 2008 WL 5137321, at *7.[1]

To illustrate the meaning of "work directly related to management or general business operations," the CFR supplies a nonexhaustive list of examples. The CFR states that such work "includes, but is not limited to, work in functional areas such as": "tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network,

---

[1] Defendant urges the Court to disregard the administration–production dichotomy as "old," "long since rejected," and "irrelevant." Mot. Summ. J. 9. As support for this view of the dichotomy, Defendant relies on a slip opinion from the Southern District of Texas that asserts, in a footnote, that the "'administrative/production' distinction has been rejected by the Department of Labor and in this federal district." *Self v. Meritage Homes Corp.*, No. G-11-0070, 2014 WL 2171468, at *7 n.11 (S.D. Tex. May 23, 2014). But this assertion, which *Self* supports only with a citation to *Villegas*, is mistaken. *Villegas* says almost the opposite of what *Self* says it does: as noted above, *Villegas* states that "the production/administration distinction is not dispositive" but is "one factor in the ultimate analysis of whether the employee's work is directly related to general business operations." *Villegas*, 2008 WL 5137321, at *7–8. Whatever its limitations, the administration–production dichotomy is very much alive in FLSA jurisprudence. *See, e.g., Kohl v. Woodlands Fire Dep't*, 440 F. Supp. 2d 626, 634–35 (S.D. Tex. 2006) (acknowledging that "[c]ourts have struggled to apply the distinction between administration and production" even though it is "clearly set out in the regulations," and observing that courts use it to "analogize from the factory setting to other work settings"); *Clark v. Centene Co. of Texas, L.P.*, 44 F. Supp. 3d 674, 684 (W.D. Tex. 2014) (contrasting administration and production).

internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b).

Courts have interpreted the administrative exemption to apply when an employee is engaged in "running the business itself or determining its overall course or policies" as opposed to the mere "day-to-day carrying out of the business'[s] affairs." *See Bratt v. Cty. of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990) (approving of similar language in the district court's opinion and describing it as "the essence" of this element). This statement of the rule, which draws on language in 29 C.F.R. § 541.201(a), originated in *Bratt* and has been widely accepted. *See, e.g., Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 123 (4th Cir. 2015) ("[I]n the end, the critical focus regarding this element remains whether an employee's duties involve the running of a business as opposed to the mere day-to-day carrying out of the business's affairs." (internal citations and quotation marks omitted)); *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535–36 (2d Cir. 2009) (quoting *Bratt* for the rule and noting that the Department of Labor also has done so approvingly); *Clark v. Centene Co. of Tex., L.P.*, 44 F. Supp. 3d 674, 683 (W.D. Tex. 2014) (quoting *Bratt* for the rule).

A fact issue exists on whether Plaintiffs' work is directly related to Defendant's general business operations. First, the record contains evidence that Plaintiffs do not work primarily in any of the areas listed above that illustrate work directly related to general business operations. Mr. Martinez testified that Plaintiffs do not work primarily in any of those areas. Resp. to Mot. Summ. J. Ex. A, at 4–5. At least two of Defendant's Systems Operators agreed. Resp. to Mot. Summ. J. Ex. A, at 14; Ex. F, at 22; Ex. H, at 29. This evidence undercuts Defendant's arguments that Plaintiffs worked in quality control, safety and health, and legal and regulatory compliance. It also contradicts Mr. Armendariz's testimony that ensuring Defendant's

8

compliance with "rules," "regulations," and "guidelines" is "the whole scope of [his] work." Mot. Summ. J. Ex. A-2, at 93.

Of course, Plaintiffs need not work in any of the CFR's illustrative areas to perform work directly related to Defendant's general business operations. To satisfy this element, Plaintiffs could work in any analogous area. Thus, the Court must examine the evidence of what Plaintiffs actually do.

Systems Operators work in the "control room" at four desks: generation, transmission, distribution, and real-time scheduling. The primary duty of a Systems Operator is not "running the company." Resp. to Mot. Summ. J. Ex. A, at 14; Ex. F, at 21. Mr. Martinez described Systems Operators' primary duty as "to provide electricity and to provide a service regarding electricity." Resp. to Mot. Summ. J. Ex. A, at 4.

Mr. Bollschweiler, who works at the transmission and distribution desks, testified that his job, in a nutshell, is to "maintain the power system"—that is, to "maintain the voltage by using resources" such as the company's ability to generate electricity or purchase it from other utility companies. Mot. Summ. J. Ex. A-3, at 146. He explained that "if the voltage is low in one area" of the system, he will "use the resources to raise it," and if the voltage is "high in one area," he will "use the resource [sic] to lower it." *Id.* Mr. Bollschweiler described his primary duty as "getting the power to the customer." *Id.* at 147.

Ms. Hoover testified that the role of Systems Operators at the transmission and distribution desks is "basically to provide electricity to customers safely and reliably" or "running the system in such a way that—to provide service to customers." Mot. Summ. J. Ex. A-6, at 258–59. Mr. Calzadilla testified that Systems Operators at the transmission desk "maintain system voltages for the grid" and "operate the . . . bulk electric system in a safe manner." Mot. Summ. J.

9

Ex. A-5, at 217–18.  When a power outage occurs, Systems Operators at the transmission desk look at "distribution maps" and try to "determine where the fault is or isolate that fault and reroute the circuit," such as by "moving power from one line to the other."  *Id.* at 222–23.

Mr. Nunez testified that Systems Operators at the generation desk "balance the demand [for electricity] with the generation" of it.  Mot. Summ. J. Ex. A-7, at 298.  To do so, they "coordinate[] with the power plant operators" and with employees in the marketing department, who purchase electricity from other utility companies when demand exceeds what the company's generators can supply.  Mot. Summ. J. Ex. A-2, at 101.  Ms. Avila and Mr. Merrill testified similarly.  Mot. Summ. J. Ex. A-4, at 188; Ex. A-8, at 327.

Ms. Avila testified that Systems Operators at the real-time scheduling desk approve and deny requests by the marketing department to purchase, sell, and transmit electricity.  Mot. Summ. J. Ex. A-4, at 177–84.  Systems Operators at the real-time scheduling desk and the generation desk coordinate with each other and with marketers to facilitate the purchase and sale of electricity.  Mot. Summ. J. Ex. A-8, at 332–33.

The record contains a fact issue on this element of the administrative exemption.  Defendant's business is the production and distribution of electricity.   Plaintiffs' primary duty is to keep the lights on for Defendant's customers.   To use the production-line metaphor, Plaintiffs sit toward the end of the production line, ensuring that the company's product—electricity—is produced in appropriate amounts and successfully delivered to customers.   The dichotomy applies imperfectly in this case, but the evidence is sufficiently mixed on the issue of production versus administration to preclude summary judgment.   The Court holds that a fact issue exists on whether Plaintiffs' primary duty is directly related to Defendant's general business operations.

## 2. Whether Plaintiffs' primary duty includes the exercise of discretion and independent judgment with respect to matters of significance

To reiterate, an employer must prove three elements to obtain the administrative exemption: (1) that the employee is "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week"; (2) that the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer"; and (3) that the employee's primary duty "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(1)–(3); *see also Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000) ("An administrative employee is an employee whose primary duty consists of office or nonmanual work directly related to management policies or general business operations for the employer or the employer's customers, which includes work requiring the exercise of discretion and independent judgment."). Because a fact issue exists on the second element—whether Plaintiffs' primary duty is directly related to Defendant's general business operations—summary judgment on the basis of the administrative exemption is inappropriate. Thus, the Court need not consider the exemption's third element.

## 3. Whether Mr. Armendariz, Mr. Calzadilla, and Mr. Merrill are exempt as highly compensated employees

An employee whose annual compensation is at least $100,000 is exempt if he "customarily and regularly" performs "any one or more of the exempt duties or responsibilities" of an administrative employee. 29 C.F.R. § 541.601(a); *see also Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 359 (5th Cir. 2015) (per curiam) (restating these requirements). "A high level of compensation is a strong indicator of an employee's exempt status, thus

eliminating the need for a detailed analysis of the employee's job duties." 29 C.F.R. § 541.601(b).

In its Motion, Defendant argues and presents evidence that Mr. Armendariz, Mr. Calzadilla, and Mr. Merrill are exempt as highly compensated employees. Plaintiffs fail to address this issue in their Response. In fact, Plaintiffs' Response contains no reference at all to Mr. Armendariz, Mr. Calzadilla, Mr. Merrill, or the exemption for highly compensated employees. Thus, Plaintiffs waived this issue, and the Court finds that Mr. Armendariz, Mr. Calzadilla, and Mr. Merrill are exempt as highly compensated employees. *See Muniz v. El Paso Marriott*, 773 F. Supp. 2d 674, 683 (W.D. Tex. 2011), *aff'd sub nom. Muniz v. Columbia Sussex Corp.*, 477 F. App'x 189 (5th Cir. 2012) (per curiam) ("In addition, Plaintiff failed to address these claims in her response to Defendant's Motion. [Thus], the Court finds Plaintiff has waived the two claims."); *Lopez v. River Oaks Imaging & Diagnostic Grp., Inc.*, 542 F. Supp. 2d 653, 659 (S.D. Tex. 2008) ("The Fifth Circuit consistently holds that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal. By analogy, failure to brief an argument in the district court waives that argument in that court." (internal citations omitted)); *cf. United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived."). Therefore, the Court grants Defendant's motion for summary judgment on the claims of Mr. Armendariz, Mr. Calzadilla, and Mr. Merrill.

## CONCLUSION

A genuine issue of fact exists as to whether Plaintiffs' primary duty is to perform work directly related to Defendant's general business operations. This fact issue precludes summary judgment based on the administrative exemption. Thus, the Court does not consider

the administrative exemption's third element—whether Plaintiffs' primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. Further, Defendant argues and proffers evidence that Mr. Armendariz, Mr. Calzadilla, and Mr. Merrill fall within the exemption for highly compensated employees. Plaintiffs fail to brief or even acknowledge this issue in their Response, so it is waived, and the Court grants summary judgment on the claims of Mr. Armendariz, Mr. Calzadilla, and Mr. Merrill.

SIGNED this 5th day of **February 2016**.

_____
DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE